IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHARLES R. JOHNSON                                                          PLAINTIFF

      v.                          CASE NO. 3:13-CV-03119-MEF

CAROLYN W. COLVIN,
Commissioner of Social Security Administration                              DEFENDANT

**MEMORANDUM OPINION**

    Plaintiff, Charles R. Johnson, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background:**

    Plaintiff filed his application for DIB on August 15, 2012, initially alleging an onset date of April 26, 2011, which was subsequently amended to March 4, 2011, due to Plaintiff's back, arthritis, numbness in legs and feet, and Scheuermann's disease. (T. 98-100, 106-107, 125) Plaintiff's application was denied initially and on reconsideration. (T. 59-61, 63-64)  Plaintiff then requested an administrative hearing, which was held on February 5, 2013.  Plaintiff was present and waived representation by counsel. (T. 97)

    At the time of the administrative hearing, Plaintiff was 25 years of age and graduated from high school. (T. 27-28) The Plaintiff had past relevant work ("PRW") experience as a sales associate

at a farm and home store, as an unloader at Wal-Mart, as a care-giver for his grandfather, as a janitor, and as a sub-contractor cleaning parks. (T. 30-31, 175). Plaintiff also had brief military service, having enlisted in the Army National Guard on February 15, 2011, and being honorably discharged on April 26, 2011. (T. 28-29, 185)

In a Decision issued on August 9, 2013, the Administrative Law Judge ("ALJ"), Hon. Harold D. Davis, found that although Plaintiff has the following severe impairments, status post kidney stones and degenerative disc disease of the lumbar spine and spondylosis of the L5-S1 vertebra (20 C.F.R. § 404.1520(c)), Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (T. 12-13). The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (T. 13-16) With the assistance of a vocational expert, Sarah Moore, the ALJ determined that while Plaintiff is unable to perform his past relevant work, Plaintiff could perform the requirements of such representative occupations as cashier, fast food worker, clerical worker, and assembler. (T. 16-18, 38-39) The ALJ then concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 4, 2011 through the date of the ALJ's Decision on August 9, 2013. (T. 18)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 7, 2013. (T. 1-4) Plaintiff then filed this action on December 30, 2013. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 8) Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 11 and 12)

## II. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability,

not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff has not been disabled from the alleged date of onset on March 4, 2011. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ's determination of Plaintiff's RFC is unsupported by substantial evidence; (B) the ALJ's negative credibility determination of Plaintiff's testimony was insufficient and improper; and, (C) the ALJ should have given more thorough consideration to whether Plaintiff's severe impairments met or are medically equivalent to the listing in § 1.04. (Doc. 11, pp. 7-16) Because of the Court's rulings set forth below on the first two points, the third point is not addressed herein.

### A.  RFC Determination

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful

activity where such inference is not warranted by clinical findings. *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982). The ALJ found that Plaintiff has the RFC to perform the full range of light work. The medical evidence of record, taken as a whole, does not substantially support that finding.

The medical evidence of record reflects the following.

During basic training for the Army National Guard, and while negotiating an obstacle course, the Plaintiff fell off a six foot wall and landed on his back on a rock protruding up from the ground. (T. 32, 267) He was told he had Scheuermann's disease, which confirmed an earlier childhood diagnosis of the condition. (T. 267, 202) Scheuermann's disease, also known as Scheuermann's kyphosis (since it results in kyphosis), is a condition where the vertebrae grow unevenly with respect to the sagittal plane, with the anterior angle often being greater than the posterior. The uneven growth results is a "wedging" shape of the vertebrae, causing kyphosis (abnormally increased convexity in the curvature of the thoracic spine). (T. 215) From the evidence presented, Scheuermann's disease "is notorious for causing lower and mid-level back and neck pain, which can be severe and disabling," "aggravated by physical activity and by long periods of standing or sitting," and "this can have a significantly detrimental effect to their lives as their level of activity is curbed by their condition." (T. 216)

After his injury in basic training, Plaintiff was unable to perform any duties, and he was honorably discharged on April 26, 2011. (T. 122, 185)

On August 12, 2011, Lance Lincoln, M.D., a primary care physician, diagnosed Plaintiff with low back pain secondary to injury, and Robaxin (a muscle relaxant) was prescribed for pain. (T. 227) On a follow up visit later that month, Dr. Lincoln prescribed Tramadol, a narcotic-like pain reliever used to treat moderate to severe pain, for Plaintiff's low back pain. (T. 226) When Plaintiff's

symptoms persisted, Dr. Lincoln arranged for an MRI. (T. 225) The MRI, performed on September 16, 2011, showed "rather pronounced early degenerative changes at the L1-L2 level" without edema, and it was noted that "the disc is markedly narrowed with disc dessication present," and "there is some inferior deformity of the L1 vertebral body that may suggest a Schmorl's node." No herniated nucleus pulposus and no central canal or neuroforaminal stenosis was noted at that time. (T. 232) While Dr. Lincoln initially noted some concern that, "suspect he wants VA disability and affects history" and "symptoms are exaggerated," his most recent progress note on January 5, 2012, does not repeat that concern, but confirms his diagnosis of low back pain and musculoskeletal deficit. (T. 221, 224, 225)

Plaintiff's medical care and treatment has mostly been provided by the Veterans' Administration. X-rays of Plaintiff's lumbar spine taken on January 3, 2012 showed spondylolisthesis of first degree at L5-S1, narrowing of the disk space at L1-L2 with slight compression change involving the inferior endplate of L1, irregularity at the endplates of T10 and T11 with narrowing of the disk spaces, and tiny caliceal calculus in the lower pole calyx region on the left. (T. 243)

Plaintiff also experienced severe left flank pain, and on February 22, 2012 he went to the emergency room at the Baxter Regional Medical Center. Plaintiff had a history of kidney stones, and a CT scan revealed either a 6 millimeter stone or a collection of two stones. (T. 328-331)

Upon returning to the VA for treatment, x-rays of Plaintiff's lumbar spine taken on July 18, 2012 showed bilateral spondylosis defects at L5 without evidence of spondylolisthesis, and endplate irregularities at T9, T10, T11, and L1 which are stable. (T. 242) An MRI of Plaintiff's lumbar spine taken on July 26, 2012 revealed multiple findings, including: mild exaggeration of the normal

lumbar lordosis; the presence of levoscoliosis involving the lumbar spine, with apex at L3; compression deformity along the inferior endplate of L1 with a prominent Schmorl's node; mild compression involving the T10 and T11 vertebrae; mild diffuse disk bulge with mild facet arthropathy and ligamentum thickening at L5-S1, with minimal to mild bilateral neural foraminal narrowing; mild diffuse disk bulge with mild facet arthropathy and ligamentum thickening at L4-L5; mild facet arthropathy and ligamentum thickening at L3-L4 and L2-L3; mild diffuse disk bulge with disk dessication and mild facet arthropathy and ligamentum thickening at L1-L2; diffuse disk bulge, mildly asymmetric to the left, with mild indentation on the ventral thecal sac without significant compression at T11-T12; and, minimal diffuse disk bulge with mild indentation on the ventral thecal sac at T10-T11. (T. 238-239)

Plaintiff was referred for a chronic pain consultation with chronic pain management and education on August 16, 2012. (T. 262-265) During that session, Plaintiff reported his pain to be a ten on a ten point scale at its worst, a six at its best, and a seven on average. (T. 264) A TENS unit was prescribed for pain control, and on August 24, 2012 it was adjusted to the chronic pain setting. (T. 264-265, 344) During a physical medicine rehab consult at the VA on August 24, 2012, Plaintiff was again assessed with Scheuermann's disease, now with worsening low back pain, and a myofascial component. It was noted that Plaintiff walks with a cane on right for balance and unloading support. Gabapentin was presecribed for neuropathic pain, and Baclofen was given for spasm and pain. (T. 268) Plaintiff was advised of potential side effects of Baclofen, which can include  impaired thinking or reactions, and care should be given when driving or doing anything that would require one to be alert[1].

---

[1] www.drugs.com/baclofen

The VA rated Plaintiff at 40% disability for lumbosacral or cervical strain, plus 20% for inflammation of sciatic nerve, for a total disability rating of 60%. (T. 256, 336) One VA disability examiner, Joe W. Crow, M.D., an orthopedist, reported on January 3, 2012 that due to back pain the Plaintiff has functional loss (defined by the VA as the inability to perform normal working movements of the body with normal excursion, strength, speed, coordination and/or endurance) in the form of excess fatigability, incoordination (impaired ability to execute skilled movements smoothly), pain on movement, disturbance of locomotion, and interference with sitting, standing or weight bearing. (T. 294-295) Dr. Crow noted that Plaintiff had guarding or muscle spasm of the thoracolumbar spine, and that it was severe enough to result in an abnormal gait and an abnormal spinal contour (such as scoliosis, reversed lordosis, or abnormal kyphosis). (T. 295) From the medical evidence of record, such findings are consistent with a patient suffering from Scheuermann's disease. Dr. Crow further noted that Plaintiff experienced mild radiculopathy on the right and moderate radiculopathy on the left. (T. 298) He reported that diagnostic testing documented arthritis, and that MRI testing showed "old Scheuermann's disease low thoracic; spondylolysis L-5 and spondylolisthesis grade I L-5/S-1." (T. 301) Dr. Crow opined that Plaintiff's thoracolumbar spine condition impacted his ability to work, and that Plaintiff, "can't work, can't bend, lift, twist, can't sit or stand long." (T. 301)

Another VA disability examiner, Dr. Leroy Q. Booe, Jr., a primary care physician, reported on November 13, 2012 that Plaintiff's diagnosis was lumbar sprain and degenerative disc disease to the lumbar spine; that Plaintiff has functional loss in the form of less movement than normal, excess fatigability, incoordination (impaired ability to execute skilled movements smoothly), pain on movement, disturbance of locomotion, and interference with sitting, standing or weight bearing.

(T. 355-356) While observing guarding or muscle spasm, Dr. Booe did not note abnormal gait or spinal contour. (T. 356) Straight leg testing was positive bilaterally. (T. 358) Radicular pain was noted to be moderate bilaterally, with mild paresthesias and/or dysesthesias bilaterally, and mild numbness bilaterally. (T. 358) Involvement of the L4/L5/S1/S2/S3 nerve roots (sciatic nerve) were also noted bilaterally. (T. 359) Dr. Booe noted that Plaintiff regularly uses a cane to ambulate. (T. 360) Regarding the functional impact of Plaintiff's thoracolumbar spine condition, Dr. Booe indicated that, "he can sit 10 minutes. He can stand ½ hour. He can walk sort distances. He can't lift heavy weights." (T. 362)

      The ALJ commented that a decision from the VA is not binding on the Commissioner, but it is to be considered and evaluated in the same manner as other opinion evidence. 20 C.F.R. §§ 404.1504, 404.1512(b)(5) and 404.1527; SSRs 96-2p, 96-5p, and 06-03p. The ALJ gave little weight to the VA impairment rating and functional assessments "because they are not fully consistent with the evidence as a whole." (T. 15) The ALJ believed that the VA examiners "apparently relied on the claimant's reported history," and the ALJ was particularly concerned about Dr. Lincoln's comment that he thought Plaintiff was exaggerating his back pain. Because of that, the ALJ concluded that "less weight can be given to the claimant's subjective complaints, which in turn lessens the weight to be given to the opinions and impairment ratings from the VA." (T. 15)

      Other opinion evidence includes two reports from state medical consultants who reviewed the available medical evidence. In a report dated September 18, 2012, Bill F. Payne, M.D., found that Plaintiff has a severe medically determinable impairment to his spine; that the impairment can reasonably be expected to produce the Plaintiff's pain and other symptoms; and, that the Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms *are*

substantiated by the medical evidence. (T. 45-46) Dr. Payne rates Plaintiff's exertional limitations as: only occasionally lifting or carrying 20 pounds; being able to frequently lift or carry up to 10 pounds; the ability to stand and/or walk (with normal breaks) for about six hours in an eight hour work day; and, being able to sit (with normal breaks) for about six hours in an eight hour work day. (T. 46) Despite answering "yes" to the question of whether the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by the medical evidence alone (T. 46), Dr. Payne then later inconsistently states, "the objective medical evidence alone *does not* reasonably substantiate the claimant's allegations about the intensity, persistence and functionally limiting effects of the symptoms," and that, "[c]onsidering the total medical and non-medical evidence in the file, the claimant's statements regarding symptoms are considered partially credible." (T. 47) Dr. Payne concluded that Plaintiff has a RFC to do light work. (T. 47) The ALJ did not recognize or address the internal inconsistency in Dr. Payne's report, but instead he gave it great weight and incorporated it into his finding regarding Plaintiff's RFC.

Another state medical consultant, Alice M. Davidson, M.D., submitted a report dated November 8, 2012. (T. 50-57) It is virtually identical to Dr. Payne's report, including the internal inconsistency regarding whether the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by the medical evidence alone (T. 54, 55) Dr. Davidson's report is not mentioned by the ALJ.

Both Drs. Payne and Davidson opined that the Plaintiff could perform PRW as a sales associate. (T. 48, 56-57) These conclusions are directly contradicted, however, by the testimony of the vocational expert, Sarah Moore, who testified that Plaintiff's past work at the farm and home supply store was classified as a material handler, which is heavy, semi-skilled work. (T. 37) The ALJ

did not mention this inconsistency in giving great weight to Dr. Payne's opinion.

After the hearing, Plaintiff was seen by Mark Tait, M.D., on April 27, 2013 for a consultative examination. Dr. Tait reported that Plaintiff is independent with activities of daily living; that his musculoskeletal exam was normal; that he had an antalgic gait and ambulates without assistive device, walking cane; that he was able to rise from a seated position without assistance; that he could stand on tiptoes and heels, and could tandem walk without problems; and, that he was unable to bend and squat secondary to pain. (T. 371-372) Upon his review of the radiological images, Dr. Tait notes good alignment of the lumbar spine, the vertebral bodies have normal height, the disc space heights are within normal limits, there are no bony degenerative changes of the lumbar spine, and his impression was "unremarkable lumbar spine." (T. 373) Dr. Tait concludes that Plaintiff should be able to sit, walk, and/or stand for a full work day; he should be able to lift/carry objects without limitations; and, Dr. Tait does not see objective data to indicate the need for a cane. (T. 373)

Promptly after receiving a copy of Dr. Tait's report, Plaintiff sent the ALJ a response advising that he disputed many of the statements contained in Dr. Tait's report. (T. 188-190) Plaintiff's response states that, "he never touched me," "never looked at me at all," and "all he did was ask questions." Plaintiff then questions how Dr. Tait could know grip strength and other things; that he did tell him about neurological weakness in his legs; and, that he needed a cane to rise from a seated position and to walk. Plaintiff questions how Dr. Tait could say that he has no limitations in lifting and/or carrying objects when he noted that Plaintiff could not bend or squat due to pain. Plaintiff states that Dr. Tait did not even ask him "half the questions that were on his report." Plaintiff reiterates that, "the guy never touched me," and he states that upon showing him the reports from his VA examinations that Dr. Tait said, "the doctors are right," then he "goes back on what he

says." Plaintiff advises the ALJ that he has people who live with him and see him all the time, and who know that he cannot lift, sit, or stand like Dr. Tait says, and he requests a hearing to bring witnesses. Plaintiff also questions how Dr. Tait can say that he has no degenerative disc disease when other medical reports confirm that he does.

In discussing Dr. Tait's report, the ALJ does not even mention the Plaintiff's response to it. The ALJ does acknowledge that, "[o]n the other hand, Dr. Tait only saw the claimant one time and did not develop a treatment history with the claimant and is not is as good a position to evaluate the claimant's subjective complaints of pain." (T. 16) The ALJ then states that Dr. Tait's findings that Plaintiff could sit, walk and/or stand for a full workday "are consistent with the objective evidence and other statements from his treating physicians." (T. 16) The Court disagrees. To the contrary, the substantial weight of the objective medical evidence of record, including even the opinions of the state medical consultants, do not support such a conclusion. Moreover, it troubles the Court greatly that Dr. Tait's radiological findings are so entirely divergent from all of the objective findings reflected in the other radiological studies of record. The ALJ does find that Dr. Tait's opinion goes too far when it states that Plaintiff can lift and carry without limitations, and that Dr. Tait's finding does not give adequate consideration to the Plaintiff's subjective complaints of pain to the extent that they are supported by the evidence as a whole. (T. 16) Nonetheless, the ALJ gives Dr. Tait's opinion substantial weight in finding that Plaintiff is not as limited as alleged. (T. 16) In the Court's view, it was error to do so.

The Court has stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (stating that the opinion of a consultative physician does

not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *Cox v. Barnhart*, 345 F.3d 606, 610 (8th Cir. 2003). Such are the circumstances in the present case. Plaintiff's treating physicians at the VA have opined that Plaintiff "cannot work, can't bend, lift, twist, can't sit or stand long," (T. 301) and "can sit 10 minutes, he can stand ½ hour, he can walk short distances, he can't lift heavy weights," (T. 362), and yet Dr. Tait, after one short examination concludes that Plaintiff has absolutely no limitations whatsoever. In the Court's view, Dr. Tait's report does not constitute substantial evidence upon which the ALJ could reasonably base his RFC decision.

The ALJ's assessment of Plaintiff's RFC is also based upon the great weight given by the ALJ to the non-examining state medical consultants. They concluded that Plaintiff could perform the full range of light work without other limitations. (T. 47, 55) However, given the limited range of motion in Plaintiff's lumbar spine, the loss of sensation in his lower extremities, positive straight leg raising test results bilaterally, mild to moderate radicular pain, paresthesias and/or dysethesias and numbness bilaterally in his lower extremities, and the involvement of his sciatic nerve bilaterally, the Court does not find the non-examining state medical consultants' opinions to constitute substantial evidence of Plaintiff's RFC. *See Jenkins*, 196 F.3d at p. 925 (opinion of a consulting physician who examined the plaintiff once, or not at all, does not generally constitute substantial evidence).

When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010), citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007). The Court believes remand is necessary to

allow the ALJ to fully and fairly develop the record further regarding Plaintiff's RFC. *See* 20 C.F.R. § 404.944; *Brissette v. Heckler*, 730 F.2d 548 (8th Cir. 1984) (holding that the ALJ is under the affirmative duty to fully and fairly develop the record).

### B.  Negative Credibility Determination

Plaintiff alleged and testified that the nature, intensity, frequency, persistence and limiting effects of his impairments prevent him from performing basic work activities. He reported pain in his mid to low back and numbness in his legs; that the pain lasts all day, and that the numbness occurs when he sits or stands too long; that any kind of movement makes his symptoms worse; that Ibuprofen 800 mg, Baclofen 10 mg, and Gabapentin 300 mg, are all taken three times daily for pain (with Baclofen and Gabapentin causing drowsiness); and, that he uses a TENS unit for pain. (T. 132-133) Plaintiff reported that his constant pain affects lifting, standing, walking, sitting, stair climbing, kneeling, squatting, bending, and reaching; that while he does his own personal care, he does not prepare meals because standing too long makes his legs numb; that he does not do any household chores; that he can ride in a car, but he does not drive because his legs go numb; that he shops in a store once a month for 30 minutes to an hour; that he talks to friends and family, but he does not go anywhere on a regular basis; and, that since his impairments began he is moody, depressed, sleepy and hurting. (T. 135-142) A third-party function report from Plaintiff's father corroborates the Plaintiff's function report. (T. 144-153)

At the hearing, Plaintiff testified that he has not worked since the onset of his disability on March 4, 2011. (T. 29) He testified that he does not drive (except down to the road to get the mail); that he does no chores around the house; he does not exercise; he uses a TENS unit and takes medications for pain; he does not pick up his two year old son; he rides in a cart while at the grocery

store, and he does not carry the groceries; that his legs go numb when he sits or stands too long; and, that he uses a cane for assistance in walking. (T. 33-36)

In determining a claimant's RFC, "the ALJ must first evaluate the claimant's credibility." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002)). Using some Social Security boilerplate language, the ALJ found that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (T. 14) The ALJ then explained that the RFC at the light exertional level takes the Plaintiff's spondylosis and degenerative disk disease into account, "gives credit to the claimant's subjective complaints of pain related to his back problems concerning his ability to sit, stand and walk as well as his kidney stones," and that pain caused by lifting and carrying is taken into account with light work. (T. 14) The ALJ goes to find that the evidence as a whole does not support any limitations in addition to those in the light work RFC. (T. 14) In support of this finding, the ALJ notes that the MRI results showed only mild degenerative changes in Plaintiff's lower thoracic and lumbar spine, and the ALJ focuses on a note from Dr. Lincoln on September 23, 2011 that the Plaintiff's low back pain complaints were exaggerated. (T. 14) These, the ALJ found, "lessen the credibility of the claimant's subjective complaints and show that he is not as limited as alleged." (T. 14)

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity

of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and, (5) the functional restrictions. *Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor, but he need only to acknowledge and consider those factors before discounting a plaintiff's subjective complaints. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

In the present case, the ALJ failed to acknowledge or discuss the *Polaski* factors in his credibility assessment of the Plaintiff. Instead, the ALJ found that an RFC of light work encompasses the Plaintiff's impairments and limitations, and that one note from a physician that suspected Plaintiff's symptoms were exaggerated lessened the Plaintiff's credibility concerning his subjective complaints of pain. As noted above, the RFC of light work is, in the Court's view, improperly based upon the inconsistent and unsubstantial opinions of the non-examining state medical consultants and a one-time examining consultant, Dr. Tait, whose opinion is clearly contradicted by all other objective medical evidence of record.

Regarding Dr. Lincoln's note that he suspected Plaintiff's symptoms were exaggerated, an ALJ may discount a claimant's subjective complaints if there is evidence that the claimant was malingering or exaggerating for financial gain. *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). However, the ALJ is not free to ignore medical evidence that does not support his conclusion. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (ALJ's opinion did not discuss or discredit all diagnoses or limitations listed in medical records). Nor may an ALJ selectively cherry-pick evidence in the record to support his preferred finding. *See e.g., Taylor v. Barnhart*, 333 F.Supp.2d 846, 856

(E.D. Mo. 2004) (ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of non-disability). It appears that the ALJ believed that Plaintiff was exaggerating his subjective complaints of pain, and to support that belief the ALJ chose to give great weight to the opinions of the non-examining state medical consultants, substantial weight to the opinion of a one-time examining consultant (Dr. Tait), and very little weight to the opinions of Plaintiff's VA physicians. Of particular concern to the Court, though, is that the opinions of the non-examining state medical consultants are internally inconsistent in that they both include an affirmation that the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms *are substantiated by the medical evidence alone* (T. 46, 54-55), but then they later state that the objective medical evidence alone *does not* reasonably substantiate the claimant's allegations about the intensity, persistence and functionally limiting effects of the symptoms, and that the Plaintiff's statements regarding his symptoms are therefore considered only partially credible. (T. 47, 54-55) It simply cannot be both ways, and the ALJ did not address this internal inconsistency before attributing great weight to these opinions. Of even greater concern to the Court is the ALJ's decision to give substantial weight to Dr. Tait's opinions when virtually all of the objective medical evidence contradicts Dr. Tait's findings and opinions. Assigning such weight to these opinions as the ALJ did seems to the Court to be tantamount to the impermissible "cherry-picking" proscribed in *Taylor v. Barnhart*.

On remand, the ALJ is directed to further develop the record concerning the credibility of Plaintiff's subjective complaints of pain; to make express credibility determinations considering the *Polaski* factors; and, to set forth any inconsistencies in the record which may cause him to reject the Plaintiff's subjective complaints.

### **IV.  Conclusion:**

After reviewing the record in this case, the undersigned is of the opinion that the ALJ's RFC findings are not consistent with the medical evidence or with Plaintiff's testimony concerning his chronic pain. Further, I find that the ALJ failed to conduct a proper *Polaski* analysis. Accordingly, this matter is hereby remanded for further consideration of the Plaintiff's subjective complaints and the work-related limitations imposed by his impairments.

Dated this 26th day of January, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE